IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ISAAC HERRERA,<br><br>    Defendant. | Case No. 22-CR-4060-LTS-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

The Government moves for a pretrial-detention no-contact order prohibiting Defendant Isaac Herrera from communicating with the minor victim in this case. Doc. 45. Defendant resists. Doc. 50. I **deny** the motion (Doc. 45).

## I.    BACKGROUND

The superseding indictment in this case charges Herrera with sexual exploitation of a child, child enticement, possession of child pornography, and travel with the intent to engage in sexual conduct with a minor. Doc. 41. Herrera was arrested on August 11, 2022, and initially waived a detention hearing. Docs. 9, 12. At his request, I held a detention hearing on October 12, 2022, and ordered Herrera remain detained pending trial. Docs. 30, 31. Evidence at the detention hearing suggested that Herrera communicated with the minor victim online for several years prior to visiting Sioux City; that they discussed being in a relationship with each other and exchanged sexual messages; and that they engaged in sexual activity upon Herrera's visit to Sioux City. *See* Doc. 32.

The Government filed a bare-bones motion for a protective order prohibiting Herrera from contacting "any identifiable victim or potential witness in this case" while detained. Doc. 45. The Government noted Defendant "ha[s] been in contact" with the

minor victim in this case from jail, the details of which were currently being investigated but included, "at a minimum, multiple recorded phone calls and text messages." Doc. 45.

I ordered the Government to provide the court with authority for its requested protective order. Doc. 46. In response, the Government filed supplemental briefing arguing that the court could impose a no-contact order on a detained defendant pursuant to the Bail Reform Act, the Crime Victims' Rights Act, or the court's inherent authority. Doc. 49. The Government also provided evidence of 90 text messages sent from the minor victim to Herrera from December 2 to 5, 2022 (Herrera did not respond); the messages indicate (among other things) the minor victim missed Herrera and felt suicidal. Doc. 49-1. The Government also provided evidence of a message sent from another inmate's account (not Herrera's) to the minor victim on September 20, saying only "Password." *Id.*

The Government also notes more than 40 jail calls between Herrera and the minor victim. Doc. 49. The Government provided evidence of two such calls (their date is unclear). *See* Ex. 2, 3. In both, it appears Herrera called the minor victim but was initially silent when the minor victim answered. *Id.* In one call, the minor victim is crying and asking Herrera to talk, and Herrera says that he is sorry and that he misses the minor victim before disconnecting. *Id.* In the other, Herrera apologizes twice before hanging up. *Id.*

According to the Government, upon receiving this evidence, the jail blocked the minor victim's phone number from Herrera's phone privileges. Doc. 49. The Government contends that some calls to the minor victim "appear" to have been "placed after the victim's phone number was blocked" and that Herrera "may have utilized other inmates' phone privileges to facilitate further communication with the victim." *Id.*

Defendant resists the imposition of a no-contact order. Doc. 50. Defendant argues that no statute authorizes the Government's requested protective order. And even if the court had inherent authority to impose communication restrictions on detained

2

defendants, Defendant argues that authority is limited to instances involving harassment or obstruction of justice. Defendant argues Herrera's post-arrest conduct in this case does not rise to the level justifying a protective order.

## II. DISCUSSION

Under the Bail Reform Act, if the court releases a criminal defendant pending trial, the court may impose conditions of release to assure the defendant's appearance in court and the safety of any person or the community.[1] For cases involving certain charges involving minor victims, like the charges here, "any release order" is required to contain certain conditions (a provision added by the Adam Walsh Act), including that the defendant not have any contact with the victim of the crime.[2] But if the court orders the defendant remain detained pending trial, the Bail Reform Act says nothing about imposing conditions.[3] Courts have uniformly held that the Bail Reform Act does not provide statutory authority to impose conditions on detained defendants.[4]

Courts have considered other sources of statutory authority and concluded the same. The Crime Victims' Rights Act, relied on by the Government here, provides that a crime victim has certain rights, including "[t]he right to be reasonably protected from the accused"; that the court must ensure the crime victim is afforded these rights "[i]n any court proceeding"; and that the Government may assert these rights on behalf of the

---

[1] **18 U.S.C. § 3142(a)-(c)**.

[2] **18 U.S.C. § 3142(c)(1)(B)**. The Government's cited cases in which courts imposed no-contact orders on *released* defendants has no bearing on the issue at hand—it is undisputed that the court could prohibit Defendant from contacting the minor victim in this case as a condition of pretrial release.

[3] **18 U.S.C. § 3142(e)**.

[4] *See United States v. Paquin*, No. CR 21-568-MV, 2021 WL 4319663, at *2 (D.N.M. Sept 23, 2021); *United States v. Sims*, No. 2:21-cr-00026-GMN-BNW, 2021 WL 1062548, at *4 (D. Nev. Mar. 18, 2021); *United States v. Potter*, No. 3:20-mj-00061, 2020 WL 6081894, at *4 (D.V.I. Oct. 15, 2020).

crime victim.[5] But courts to analyze the issue have held this statute does not provide the court with authority to impose no-contact orders on detained defendants.[6]

There are statutes that explicitly authorize the court to restrain a detained defendant's communications, but none of them are applicable here. Under 18 U.S.C. § 1514, the court may issue a protective order "prohibiting harassment of a victim . . . in a Federal criminal case . . . if . . . harassment . . . exists or . . . such order is necessary to prevent" conduct amounting to federal witness tampering; and if the case involves a minor victim, the court may prohibit "harassment or intimidation of the minor victim . . . if . . . the conduct at issue is reasonably likely to adversely affect the willingness of the minor . . . victim to testify or otherwise participate in the . . . investigation."[7] "Harassment" is defined as "a serious act or course of conduct directed at a specific person that . . . causes substantial emotional distress . . . [and] serves no legitimate purpose."[8] Here, Herrera's conduct—calling the minor victim and apologizing or saying he misses the minor victim—does not appear to amount[9] to harassment, intimidation, or witness tampering. I note, however, that the existence of this statute does not necessarily mean Congress intended to limit the exercise of the court's inherent authority: the

---

[5] **18 U.S.C. § 3771(a)(1), (b)(1), (d)(1)**.

[6] *Paquin*, 2021 WL 4319663, at *2; *Sims*, 2021 WL 1062548, at *3; *but see **United States v. Randall***, No. 1:21 CR 40 MR WCM, 2021 WL 2459800, at *1-2 (W.D.N.C. June 16, 2021) (imposing no-contact order on defendant detained pending trial, citing Crime Victims Act; defendant did not object to no-contact order and court did not analyze whether it had authority to impose).

[7] **18 U.S.C. § 1514(b)(1)-(2)**. This statute requires the Government to institute a separate civil action, and therefore, the issuance of any protective order under this statute would be a dispositive motion that I, as a magistrate judge, could not issue unless on a report-and-recommendation basis. The statute also requires the court hold a hearing before issuing any protective order.

[8] **18 U.S.C. § 1514(d)(1)(B)**.

[9] The court keeps in mind that this type of communication could constitute harassment or witness tampering, especially with a minor victim, depending on factors such as the nature and frequency of contacts.
4

legislative history suggests that a court already had the authority to restrain a defendant's communications in a criminal proceeding, but the statute was needed to provide authority "to order other individuals who may be threatening the victim or witness," such as the defendant's friends, associates, or family members, "to stay away."[10]

A court also has statutory authority to impose a no-contact order as a condition at sentencing when the defendant has been convicted of certain racketeering or drug-trafficking offenses upon a showing that contact would enable the defendant to "control, manage, direct, finance, or otherwise participate in an illegal enterprise." [11] Here, Defendant is not charged with racketeering or drug trafficking, and the contact does not involve Defendant controlling an illegal conspiracy from detention.

Like other courts, I conclude that no statute grants the court authority to restrain Defendant's communications while detained. The next issue is whether the court has "inherent authority" to impose such a condition.

The Eighth Circuit has never squarely addressed this issue. The Government notes that in *United States v. McHenry*, the Eighth Circuit affirmed a sentencing enhancement for obstruction of justice based on the defendant's violation of a no-contact order imposed as a condition of pretrial detention.[12] In that case, the defendant was prohibited from contacting his minor victim, but while awaiting sentencing, he sent a letter to the victim asking the victim to "look out for [him] one last time . . . and send [him] a couple dollars."[13] In upholding the obstruction sentencing enhancement, the court noted that the letter "not only violated the court's no-contact order, but was also an unlawful attempt to influence a prospective witness in the sentencing proceedings" (which the court noted may have been successful, as the victim did not testify at sentencing and no restitution

---

[10] **S. Rep. No. 97-532, at 27** (1982).

[11] **18 U.S.C. § 3582(e)**.

[12] 849 F.3d 699, 707-08 (8th Cir. 2017).

[13] *Id.* at 707.

was awarded).[14] The defendant in *McHenry* did not challenge the validity of the no-contact order, and the Eighth Circuit did not address the trial court's authority to impose such an order.

If *McHenry* can be said to support the court's inherent authority to impose no-contact orders on detained defendants, other Eighth Circuit cases that touch on this issue suggest otherwise. In *United States v. Wilson*, the district court imposed a no-contact order as a condition at sentencing on a supervised-release violation.[15] On appeal, the defendant challenged the imposition of this condition while he was imprisoned, and the parties agreed "that while a district court can make non-binding recommendations to the Bureau of Prisons ("BOP") regarding a defendant's communication during imprisonment, a district court does not have statutory authority to issue binding orders."[16] The Eighth Circuit declined to address the government's argument that the no-contact order should be viewed "as a nonbinding recommendation," instead holding that any error was harmless, as the defendant had completed his term of imprisonment, and there was no evidence that "the BOP ever enforced the order . . . or that the order otherwise prejudiced [the defendant]."[17]

In *United States v. Duffin*, the defendant challenged the sentencing court's imposition of a no-contact order with the minor victim while the defendant was imprisoned.[18] The Eighth Circuit held that "[t]o the extent the district court ordered [the defendant] not have contact with his victims, the district court does not have statutory authority to issue such an order."[19] The court ultimately found that although the judge's

---

[14] *Id.*

[15] 709 F.3d 1238, 1240 (8th Cir. 2013).

[16] *Id.* at 1241.

[17] *Id.* at 1241-42.

[18] 844 F.3d 786, 789-90 (8th Cir. 2016).

[19] *Id.* at 791.

6

oral statements at sentencing suggested the condition was an order, "the actual provision was only included in the recommendation section of the judgment."[20] The court held it lacked jurisdiction to review the non-binding recommendation to the BOP.[21]

In *United States v. Allmon*, the district court imposed a communication restriction on the defendant at sentencing based on the statute authorizing such conditions for drug traffickers.[22] Three years later, the district court sua sponte imposed more stringent conditions, limiting the defendant's communications to only his attorney, after receiving evidence in another case that the defendant had tried to circumvent the court's original order.[23] On appeal, the Eighth Circuit vacated the later restrictions.[24] The court noted the statute authorized a sentencing court to restrict a defendant's communications when "imposing a sentence or at any time thereafter upon motion" by the government.[25] The Eighth Circuit held the statute did not authorize the sentencing court to impose new restrictions after sentencing upon its own motion, and therefore, the Eighth Circuit held the court lacked jurisdiction to further restrict the imprisoned defendant's communications.[26] The court noted its ruling "in no way impacts a sentencing court's inherent sentencing authority," but concluded the statute "provided the sentencing court authority to issue a communication restriction post-sentencing, but also limited the sentencing court's authority."[27]

None of the Eighth Circuit cases address whether a court has the inherent authority to impose communication restrictions on detained defendants. Although the court did not

---

[20] ***Id.***

[21] ***Id.***

[22] 702 F.3d 1034, 1034-35 (8th Cir. 2012).

[23] ***Id.*** at 1035.

[24] ***Id.*** at 1034-35.

[25] ***Id.*** at 1036 (cleaned up).

[26] ***Id.*** at 1038.

[27] ***Id.***

7

question the pretrial no-contact order imposed on the detained *McHenry* defendant, the court's decisions in *Wilson*, *Duffin*, and *Allmon* suggest that a sentencing court cannot impose a no-contact order on detained defendants when the court lacks statutory authority for such an order. As no party argued in these cases that the court possessed the inherent authority to restrict a detained defendant's communications, the Eighth Circuit did not address the precise issue currently before the court.

The Government relies on three circuit court decisions from outside the Eighth Circuit. In *Wheeler v. United States*, the sentencing court imposed a sentencing condition directing the BOP to prevent the defendant from communicating with a trial witness and nine other people while imprisoned (the nine others consisted of the witness's family and bosses, to whom the defendant had attempted "to expose . . . certain information that discredited" the witness).[28] The Ninth Circuit reversed the order imposing this condition and remanded for further consideration.[29] The Ninth Circuit rejected the defendant's argument that the no-contact order exceeded the trial "court's authority because it interfered with the executive branch's domain of prison administration."[30] The Ninth Circuit noted the court's "inherent power to protect witnesses," "'to ensure the orderly and expeditious progress of a trial,'" and "to protect the administration of justice from 'abuses, oppression and injustice.'"[31] The court held that under this inherent power, the district court could issue no-contact orders at sentencing under certain limited circumstances that the district court had not addressed.[32] The court held to sustain the order on remand, the district court must find that the defendant's communication with the ten named witnesses would "pose a clear and present danger to the witness[es]" and

---

[28] 640 F.2d 1116, 1118 (9th Cir. 1981).

[29] *Id.*

[30] *Id.* at 1123.

[31] *Id.* at 1124 (quoting *Bitter v. United States*, 389 U.S. 15, 16 (1976)).

[32] *Id.*

that the no-contact order was "narrowly drawn" such that there were "'no reasonable alternatives'" available "'having a lesser impact on First Amendment freedoms.'"[33]

In *United States v. Sotelo*, the defendant appealed a sentencing condition restricting his communications while imprisoned "to family members, legal counsel, and persons who contact the [BOP] and assent to receiving communications from [the defendant]."[34] The court held "a district judge does not have the authority to impose a sentence that is not specifically authorized by statute."[35] The court found *Wheeler* did not "shed any light" on whether the blanket restriction was permissible, since *Wheeler* involved a specific witness, while the defendant's restriction "encompass[ed] the public as a whole."[36] The court noted the defendant did "not contest the restriction that he not communicate with . . . a government witness who testified against him."[37] The Seventh Circuit ultimately held "the district court did not have the authority to impose the blanket communication restriction," but noted the court could have recommended the BOP impose this restriction and thus, modified the sentence accordingly.[38]

The Seventh Circuit again addressed a no-contact order imposed at sentencing in *United States v. Morris*.[39] In that case, defendant pleaded guilty to crossing state lines with the intent to engage in a sex act with a minor.[40] The sentencing court prohibited the defendant from contacting the minor victim or her family based on evidence "that while imprisoned, [the defendant] persisted in contacting his victim by calling her home, asking his friends to relay messages to her, and writing her a letter," and the minor victim and

---

[33] *Id.* at 1124 (quoting *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978)).

[34] 94 F.3d 1037, 1040 (7th Cir. 1996).

[35] *Id.* at 1040.

[36] *Id.* at 1040-41.

[37] *Id.* at 1040.

[38] *Id.* at 1041.

[39] 259 F.3d 894, 900-01 (7th Cir. 2001).

[40] *Id.* at 896.

9

her family testified how the defendant's "repeated attempts to contact the victim affected her."[41] The Seventh Circuit held that although no statutory authority existed to impose the no-contact order, a trial court has the inherent power to protect the administration of justice, which "may be invoked only when the defendant's conduct presents significant interference with the administration of justice."[42] The court held "rare and compelling circumstances" existed for the imposition of the no-contact order in this case, reasoning:

> [B]ecause [the defendant] is endeavoring to withdraw his guilty plea, a future trial is possible and the victim would be a most important witness for the prosecution. [The defendant] has perpetuated his harmful influence in the victim's life by persistently contacting her indirectly by relaying messages through his friends, and directly by telephone and a letter. The purpose of all [the defendant]'s communications has been to prolong his presence in the victim's life and to insistently communicate his desire to have an intimate relationship with her in the future, the very type of contact for which he was incarcerated. The victim is particularly vulnerable because she is a child. The purpose of the no-contact restriction is not to punish [the defendant], but to protect his victim and her family from further harassment, and reduce the possibility of creating a reluctant witness.[43]

In addition to these circuit court decisions, the Tenth Circuit has twice (in unpublished decisions) upheld a condition prohibiting a defendant convicted of producing child pornography from contacting his children, one of whom was a victim, while in prison.[44] The court held the no-contact order was not part of the defendant's sentence "that he must attack under § 2255," but rather, "a civil injunction pursuant to [the district court's] ancillary jurisdiction."[45] The Tenth Circuit affirmed the district court's refusal to modify the no-contact order based on the defendant's good behavior in prison, noting

---

[41] *Id.* at 897.

[42] *Id.* at 900 (cleaned up) (quoting *Wheeler*, 640 F.2d at 1124).

[43] *Id.* at 901.

[44] *United States v. Grigsby*, 854 F. App'x 249, 251, 255 (10th Cir. 2021); *United States v. Grigsby*, 737 F. App'x 375, 376-78 (10th Cir. 2018).

[45] 737 F. App'x at 377.

that given the "heinous facts" underlying the defendant's conviction, the district court reasonably required "more concrete evidence that contact between [the defendant] and his children would be in the children's best interest before modifying the no-contact order."[46] The court declined to address the defendant's constitutional challenge, noting the defendant should have raised the issue on direct appeal.[47]

On the other hand, the D.C. Circuit, in a published per curiam decision, vacated a defendant's sentencing condition restricting his telephone privileges in prison to family members and counsel.[48] Both parties agreed the sentencing court "lacked statutory authority" to impose this restriction during confinement, and the circuit court did not address inherent authority.[49]

The Fifth Circuit has also addressed (in an unpublished decision) a no-contact order imposed as a condition of confinement at sentencing.[50] In that case, the defendant pleaded guilty to child enticement and admitted to engaging in an online sexual relationship with the minor victim that culminated in at least one in-person sexual meeting.[51] The sentencing court imposed a no-contact order prohibiting the defendant from contacting the minor victim while imprisoned, despite the objections of the victim and her parents, who believed prohibiting all contact could be detrimental to the victim's mental health.[52] On appeal, the Fifth Circuit held "the district court did not have any statutory authority to impose the no-contact condition."[53] The court noted no binding authority "addressed whether district courts have inherent authority to impose no-contact

---

[46] *Id.* at 378 & n.3.

[47] *Id.* at 378.

[48] *United States v. Ginyard*, 215 F.3d 83, 88 (D.C. Cir. 2000) (per curiam).

[49] *Id.*

[50] *United States v. Darwish*, 755 F. App'x 359 (5th Cir. 2018) (per curiam).

[51] *Id.* at 361.

[52] *Id.*

[53] *Id.* at 362.

11

conditions as part of a sentence of imprisonment," but it recognized the Seventh and Ninth Circuits (in *Morris* and *Wheeler*) had found inherent authority to impose "no-contact conditions in response to credible concerns of harassment that would interfere with the administration of justice."[54] The Fifth Circuit noted the district court had made no such findings and suggested that imposing the no-contact order "to allow the victim to mature prior to making the decision to engage in contact with [the defendant]," while a laudable concern, did not implicate the administration of justice.[55] Ultimately, the court reversed for the district court to address in the first instance whether inherent "authority exists and whether, if it does, these circumstances support exercise of such authority."[56]

Here, even if I were to find that courts had inherent authority in some circumstances to restrict a detained defendant's communications, those circumstances do not exist here. *Wheeler* and other circuit court decisions suggest that to the extent inherent authority exists (in the sentencing context), the no-contact order must be necessary to prevent harassment, an imminent threat, or clear and present danger, or to protect the administration of justice. District courts addressing their inherent authority to impose no-contact orders as a condition of pretrial detention have followed these circuit court decisions and construed this inherent authority narrowly.[57]

---

[54] *Id.* at 363.

[55] *Id.*

[56] *Id.*

[57] *Sims,* 2021 WL 1062548, at *1, *4-6 (applying *Wheeler* test and holding court had inherent authority to prohibit defendant from contacting sex-trafficking victims, some minors, as a condition of pretrial detention when the defendant had sent letters to one victim in which he asked her to tell another victim to stop spreading lies about him, another unsent letter had been found in the defendant's possession that instructed a victim on how to interact with the authorities, and the defendant had made statements in jail that his charges would be dropped as long as the victims admitted they lied to authorities out of fear; the court found no evidence that defendant's contact posed a danger or threat to victims but imposed the no-contact order to protect the administration of justice since defendant "has repeatedly tried to get these victims to recant their statements"); *Potter*, 2020 WL 6081894, at *1, *5-7 (holding court had inherent authority to prohibit defendant from communicating with anyone other than counsel during pretrial detention, when defendant's offense conduct involved impersonating officials over the

Here, almost all the text messages the Government complains of were sent from the minor victim to Herrera, not vice versa; the only message from Herrera (saying "Password") was sent months ago and does not demonstrate threatening behavior or an attempt to influence the minor victim's involvement in this case. The Government also notes forty phone calls between detained Defendant and the minor victim but does not state when these calls took place nor who initiated the calls. The two recorded phone calls in evidence, however, appear to have been placed by Herrera. In one call, Herrera is silent other than apologizing twice; in the other, he apologizes and says he misses the minor victim. Although short, these phone calls are troubling; as the Government notes, the minor victim sounds distressed that Herrera has called but is silent at first. The text

---

phone to scam money from victims, and the defendant continued to engage in this conduct from jail); *Paquin*, 2021 WL 4319663, at *1, *4 (adopting *Wheeler* test and holding that magistrate judge exceeded inherent authority in prohibiting defendant from contacting his son or the victim while in pretrial detention based on the defendant's offense conduct in which he threatened to kill the victim and asked his son to help; the court found no evidence the defendant posed an imminent threat to the victim, as he had not attempted contact since his arrest; and the court found no evidence suggesting the defendant would attempt to influence his son's testimony, and in any event, lesser restrictions were available, such as prohibiting defendant from discussing the case with his son, since the defendant's calls and mail were monitored in jail); *see also* ***United States v. Streett***, 437 F. Supp. 3d 940, 944, 952-53 (D.N.M. 2020) (rejecting government request to prohibit detained defendant awaiting sentencing for sexual misconduct offenses from possessing pictures of his minor victims after defendant asked a friend to access one of his victims' social media pages and send him a picture of her; the court held in lacked inherent authority to issue such a condition since the defendant had "not threatened any proceedings before the Court, interfered with a witness, or flouted any of the Court's orders"; the court noted it had already imposed a no-contact order on the detained defendant but did not address its authority to do so). A court in the middle district of Pennsylvania has rejected the *Wheeler* test in the sentencing context, instead holding that a court need only find a no-contact order is necessary "to protect victims or witnesses" or the administration of justice; but even still, the facts in that case better support the need for a no-contact order under the *Wheeler* test than here. ***United States v. Diaz***, No. CR 3:16-85, 2021 WL 5999196, at *1, *3 (M.D. Pa. Dec. 20, 2021) (holding no clear error in prohibiting defendant from contacting his girlfriend while imprisoned upon revocation of supervised release, when defendant violated condition of supervised release prohibiting contact with his girlfriend by strangling and assaulting her and asking her to recant testimony and destroy evidence).

13

messages from the minor victim also suggest these calls affected the victim, as at one point, the victim appears to reach out to Herrera in response to some form of contact (likely a call, but as the Government has not provided the dates of the calls, I cannot be sure). The victim's messages suggest that the victim's mental health is in a precarious state, in part due to the lack of contact with Defendant—which is surely not helped by Defendant's phone calls prolonging the "relationship."

Ultimately, however, I do not find that Defendant's contact here suggests an attempt to influence the witness's testimony or otherwise demonstrates a negative effect on the administration of justice. And although a closer issue, neither do I find an imminent threat or clear and present danger exists justifying the imposition of a no-contact order. Herrera's conduct here can be distinguished from the defendant in *Morris*, who continued to contact the minor victim against her wishes, such that the conduct amounted to harassment, and who indicated a wish to be together upon release, which the court found could affect the minor victim's willingness to testify.

In addition, I do not find a no-contact order necessary here given the steps the jail has taken to prohibit Defendant from contacting the minor victim. Since the text messages in evidence, the jail has blocked Defendant from receiving messages from or sending messages to the minor victim. The jail has also blocked the minor victim's phone number from Defendant's phone privileges. The Government suggests Defendant may be using other inmates' accounts to contact the minor victim but offers nothing more than speculation to this effect.

I do not find the imposition of a no-contact order as a condition of pretrial confinement appropriate in this case. The Eighth Circuit has never held that the court has authority to issue such an order, and other circuit courts have recognized such inherent authority only in limited circumstances not present here. I caution Herrera, however, that it would be in his best interest to stop all contact with the minor victim in this case, as his jail communications are monitored, and the sentencing court may consider Herrera's continued contact at sentencing.

### *III. CONCLUSION*

The court **DENIES** the Government's motion for a protective order (Doc. 45).

**SO ORDERED** on January 25, 2023.

                                    Kelly K.E. Mahoney
                                    Chief United States Magistrate Judge
                                    Northern District of Iowa