# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 22-CR-4060-LTS-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| ISAAC HERRERA, | |
| Defendant. | |

The Government filed a renewed motion for a pretrial-detention no-contact order. Doc. 67. Defendant Isaac Herrera did not file a resistance, and the time for doing so has now passed.[1] I **grant** the motion **in part and deny** the motion **in part** (Doc. 67).

## I. BACKGROUND

Herrera is detained pending trial. The Government previously moved for a no-contact order prohibiting Herrera "from having any direct or indirect contact with any identifiable victim or potential witness in this case." Doc. 45. The Government cited no authority for its requested order, and I ordered the Government supplement its briefing. Doc. 46. The Government then requested that the court impose a no-contact order under the Bail Reform Act or pursuant to its inherent authority. Doc. 49. The Government provided evidence that Herrera, who is charged with various crimes involving sexual exploitation and conduct with minor victims, had been communicating with one of the minor victims located in Iowa. *See* Doc. 53. The Government's evidence constituted the following:

---

[1] **LCrR 47**.

- A message sent from another inmate's account to the minor victim on September 20, 2022, saying only, "Password."
- 90 text messages sent from the minor victim to Herrera from December 2 to 5, 2022, indicating (among other things) that the minor victim missed Herrera and felt suicidal; Herrera did not respond.
- Two recordings of short phone calls from Herrera to the minor victim (date unclear). In both, Herrera was initially silent when the minor victim answered. In one call, the minor victim is crying and asking Herrera to talk, and Herrera says that he is sorry and that he misses the minor victim before disconnecting. In the other, Herrera apologizes twice before hanging up.
- Information that in total, there were more than 40 jail calls between Herrera and the minor victim (dates and content unknown).
- Information that the jail blocked the minor victim's phone number from Herrera's phone privileges (with no evidence any contacts had occurred after the jail instituted these measures).

*Id.* Ultimately, I concluded that based on the current evidence, the court lacked statutory or inherent authority to impose conditions on the detained Defendant. Doc. 53.[2] I noted the Bail Reform Act did not authorize imposing conditions on detained defendants. *Id.* And I concluded that "even if I were to find that courts had inherent authority in some circumstances to restrict a detained defendant's communications, . . . . the no-contact order must be necessary to prevent harassment, an imminent threat, or clear and present danger, or to protect the administration of justice." *Id.*

Since the court's ruling, the Government has obtained a second superseding indictment adding charges of victim tampering, in violation of 18 U.S.C. § 1512(b)(2)(A), and destroying and altering records in a federal investigation, in

---

[2] Available on Westlaw at *United States v. Herrera*, No. 22-CR-4060-LTS-KEM, 2023 WL 415799 (N.D. Iowa Jan. 25, 2023).

violation of 18 U.S.C. § 1519. Doc. 57. Based on evidence unknown to the Government at the time of the first motion (and supporting the second superseding indictment), the Government moves to renew its motion for a no-contact order. Doc. 67.[3]

The Government submitted two exhibits in support of its motion. Docs. 68, 68-1. Exhibit 1 consists of a letter from Herrera to the mother of another inmate, asking her to forward enclosed letters to an unnamed contact (the letter indicates her son explained how to forward the letters). Doc. 68. Herrera asks that they refer to the recipient of the letters as his brother "and nothing else," although context makes clear that they are intended for the Iowa minor victim in this case. *Id*. The first enclosed letter (addressed "to my dearest little brother") apologizes for leaving the recipient in the dark for so long and indicates hope that they can re-establish contact through letters; indicates that Herrera loves and misses the recipient and that they will see each other soon; states that the jail blocked the recipient's phone number; and indicates that Herrera is "going to need you do a couple of things for me" that will be explained later and that will allow Herrera "to see you sooner and faster." *Id*. The second enclosed letter notes the recipient has access to Herrera's social media accounts and asks the recipient to change something[4] in Herrera's Snapchat for him; notes that Herrera watched the recipient's interviews and noticed "lies" and "things said out of anger"; and asks the recipient to schedule another interview to recant what the recipient said before and to say that the recipient had access to Herrera's phone and "put all that bad stuff on [Herrera's] phone," including "27 or 30 pics of [the recipient], 10 or 12 of boys under twelve, and the rest are randoms [the recipient and friends] met over" a social media site. *Id*. In the third enclosed letter,

---

[3] The Government suggests the court issued its order on the first motion "[b]efore the details and the extent of the Defendant's communications with this victim could be properly investigated and analyzed." Doc. 67. The court ruled on a ripe motion, which failed to set forth the proper standard for the Government's requested court action and failed to provide the court with evidence to meet that standard.

[4] The handwriting is hard to read, but it may ask for the recipient to change the "bitmoji" (cartoon avatar representing Herrera) in Herrera's Snapchat account.

Herrera again asks the recipient to access Herrera's social media accounts and schedule another interview with the authorities:

- Herrera notes the recipient has access to his social media accounts and asks him to "wipe it gone" and "[c]lear the cache."
- Herrera asks the recipient to schedule another interview and "let them know that that isn't me on the picture they showed you" and that they are confusing Herrera with someone else the recipient met via social media two years ago.
- Herrera notes that the recipient's friends lied about "touching" between Herrera and the recipient and says that "we did things as a joke but not to this extent they are claim[ing]." Herrera notes that the recipient's friends told authorities the recipient gave Herrera a hickey but that in actuality, his "friend Maria gave it to [him], . . . remember."
- Herrera notes he understands the recipient lied during the first interview due to stress and being angry at Herrera. Herrera asks the recipient to "go back and tell them that they are wrong" because the recipient "had [Herrera's] phone all the time while I was here" and knows how to log in.
- Herrera notes that the jail took his "texter away because of the call we made" and that the texts will be used in court. Herrera notes "some of the texts are Yikes," talking about "marriage and living together or kissing," which is "a joke but the FED don't joke around."
- Herrera asks the recipient to tell the interviewer that Herrera did not take the pictures of the recipient or anyone else. Herrera notes the recipient "put all the bad stuff on my phone because you were mad I didn't let you drive the car and other things. You did it without me knowing because I was asleep."
- Herrera provides explanations the recipient can tell the authorities about where the pictures came from.

4

- Herrera also asks the recipient to make an account for a social media site, then log in to one of Herrera's accounts and transfer "stuff" from Herrera's account to the recipient's account "for proof."
- Herrera concludes by asking the recipient to say he "regret[s] all the lies [he] said and blaming [Herrera] because [the recipient was] mad at [Herrera]."

*Id*.

Government Exhibit 2 consists of notes of jail telephone calls between Herrera and a friend who resides in Texas. Doc. 68-1. The phone calls from mid-October through November 2022 focus on Herrera's attempt to create evidence that someone hacked his social media accounts and framed him for the charged offenses: Herrera asks his friend to "expose" the people posing as him on social media; provides his friend with the usernames and passwords for his social media accounts; asks his friend to message certain accounts from certain locations using Herrera's accounts; and notes messages sent from his account (by the friend) while Herrera is in jail will prove that someone other than Herrera had access to his accounts (Herrera's friend questions this plan since their phone calls are being recorded, but Herrera indicates he is using another inmate's account so the calls will not be traced back to him). *Id*. Beginning in December, Herrera directs his friend to message the minor victim in this case using Herrera's social media accounts. *Id*. Herrera's phone calls with his friend in December consist of Herrera messaging back and forth with the minor victim using his friend as an intermediary. In them, Herrera tells the minor victim (through messages sent from his friend) that he is facing thirty years in prison, but the minor victim can help him get out of that by saying people are pretending to be Herrera; that the minor victim should get a new phone because the jail blocked his calls and text messages; and that pictures police showed to the minor victim of another minor's penis were pinned on Herrera based on the wall color and did not show his face (the minor victim had told police the pictures appeared to be taken in Herrera's room based on the wall color). Herrera also told his friend that he might

5

provide him with the account information for his iCloud account so that his friend could delete it.

## II.	DISCUSSION

I previously recognized that circuit courts outside the Eighth Circuit have held that a court has the inherent authority to impose no-contact orders on detained defendants under certain limited circumstances. Doc. 53. I noted that in *United States v. Morris*, the Seventh Circuit upheld a no-contact order imposed at sentencing prohibiting the defendant from contacting his minor victim when the defendant was seeking to withdraw his guilty plea, and the defendant continued to contact the minor victim over her objection "to prolong his presence in the victim's life and to insistently communicate his desire to have an intimate relationship with her in the future," creating the possibility of "a reluctant witness."[5] I also recognized that although the Eighth Circuit had never addressed the inherent-authority issue, it had upheld an obstruction sentencing enhancement based on the defendant's asking a minor victim to "look out for him" prior to sentencing and "send [him] a couple dollars," which violated the court's pretrial no-contact order and "was also an unlawful attempt to influence a prospective witness in the sentencing proceedings."[6]

---

[5] 259 F.3d 894, 900-01 (7th Cir. 2001).

[6] *United States v. McHenry*, 849 F.3d 699, 707-08 (8th Cir. 2017). I also noted a federal statute authorizes the issuance of no-contact orders to protect minor victims in federal criminal cases from harassment and intimidation based on evidence "that the conduct at issue is reasonably likely to adversely affect the willingness of the minor . . . victim to testify or otherwise participate in the Federal criminal case or investigation." **18 U.S.C. § 1514(b)(2)**. It also authorizes the imposition of no-contact orders to prohibit harassment of any witness if "necessary to prevent" destroying records amounting to criminal obstruction. *Id.* **§ 1514(b)(1)**; *see also* **18 U.S.C. § 1512(c)**. As I noted in my prior order, however, this statute requires a separate civil action and hearing, and its main purpose is providing the court with jurisdiction to restrain individuals other than the defendant (such as the defendant's friends or family members, if engaging in harassment). Doc. 53.

Here, based on the new evidence submitted by the Government, I find that the court possesses inherent authority to prohibit the detained Defendant from contacting the minor victim in this case.[7] Herrera has repeatedly attempted to influence the minor victim's testimony, indicating that if the minor victim recants prior statements, Herrera will be released sooner, and they can be together. Herrera has provided stories for the minor victim to tell the authorities instead: that the minor victim put child pornography on Herrera's phone, that the minor victim previously lied due to anger and fear of being in trouble, and that a different specified adult took the pornographic pictures of the minor victim. Herrera also asked the minor victim to clear Herrera's social media accounts for him. Herrera's contacts with the minor victim amount to a significant interference with the administration of justice. In addition, Herrera has persisted in attempting to contact the minor victim—through letters and messages sent by third parties and phone calls using other inmate's accounts—despite the jail blocking the minor victim's phone number from Herrera's phone privileges. Under the circumstances, a no-contact order is necessary to protect the administration of justice, prevent obstruction, and ensure the orderly and expeditious progress of trial.

I also find that Herrera should be prohibited from contacting M.H., his friend in Texas. Herrera's contacts with M.H. amount to a significant interference with the administration of justice, as he has asked M.H. to fabricate and destroy evidence related to Herrera's social media accounts, and he has used M.H. to communicate with the minor victim, despite the jail blocking his phone privileges, and to attempt to influence the minor victim's testimony. A no-contact order is necessary to prevent obstruction and protect the administration of justice.

The Government broadly requests a no-contact order prohibiting Herrera "from having any direct or indirect contact with any identifiable victim or potential witness in this case." Doc. 67. As I found in my prior order, courts have only imposed no-contact

---

[7] *See* Doc. 53 at 13 n.56.

orders on detained defendants under limited circumstances and based on specific evidence of obstructive or harassing contacts. Doc. 53. Here, the Government only offers evidence of Herrera's contacts with the minor victim and with M.H. Accordingly, I do not find that a broader no-contact order is warranted.

## III. CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** the Government's renewed motion for a protective order (Doc. 67). Herrera is prohibited from contacting, either directly or indirectly through third parties, the Iowa minor victim and the Texas contact M.H. (whose contacts with Herrera are discussed in this order). Violation of this no-contact order could result in, among other things, contempt charges or a sentencing enhancement.

**SO ORDERED** on March 15, 2023.

*Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa